**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**JUAN COVARRUBIAS-RODRIGUEZ,**

    *Petitioner*,

v.                                                                              **Case No. 5:26-CV-0594-JKP**

**KRISTI LYNN NOEM, et al.,**

    *Respondents*.

**ORDER GRANTING**
**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241. Respondents (sometimes referred to as "the Government") have filed a response (ECF No. 5). The time for filing a reply has passed and the petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition.

**I. BACKGROUND**

Petitioner, a native and citizen of Mexico, entered the United States in September 2006 on a valid B-1/B-2 visa. Immigration and Customs Enforcement ("ICE") took Petitioner into custody on July 15, 2025, without stating a legal reason for detention or arrest. The agents lacked a warrant and had no reasonable suspicion to detain or arrest him. They explained that they were looking for a different individual.

Since taking him into custody, Respondents commenced removal proceedings and have detained Petitioner under 8 U.S.C. § 1226. There is no indication that ICE issued a Notice to Appear ("NTA"). In September 2025, an immigration judge ("IJ") denied bond after finding Petitioner had not carried his burden to show he was not a flight risk. Three months later, an IJ denied bond because Petitioner had not shown "that circumstances have materially changed since" the earlier bond determination.

In the instant habeas petition, Petitioner claims that his detention violates procedural due

process under the Fifth Amendment through the denial of a Constitutionally adequate bond hearing where the Government bears the burden of proof regarding flight risk and/or danger to the community. He further claims that his procedural due process rights were violated because the evidence is legally insufficient to prove that he is a flight risk. He also asserts claims under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. He seeks immediate release or an order that Respondents provide him a bond hearing where the Government bears the burden of proof.

In their response to the Petition, Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1226 and that Petitioner is, in effect seeking an order to overturn and vacate a discretionary decision by the immigration court. They assert that § 1226(e) divests this Court of jurisdiction to review the bond decision or reweigh the evidence. They do not address the due process challenges of Petitioner outside of their jurisdictional arguments.

Because it ultimately concludes that Petitioner is entitled to habeas relief based upon his due process claim regarding allocation of burden of proof, the Court limits its consideration to that claim. It will consider the evidence and its apparent insufficiency in that context but will not otherwise consider the insufficiency claim. There is no reason to delve into that particular claim or into any APA claim.

## II. JURISDICTION

Jurisdiction is always an initial consideration because it concerns the Court's power over a case. *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Several sections of the INA, codified at 8 U.S.C ch. 12 § 1101 et seq., curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). Respondents invoke 8 U.S.C. § 1226(e) as divesting this Court of jurisdiction. This Court, moreover, has rejected jurisdictional arguments under § 1226(e). *See, e.g.*, *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *2 (W.D. Tex. Oct. 21, 2025).

While § "1226(e) may strip [courts] of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute . . . it does not deprive [courts] of all authority to review statutory and constitutional challenges." *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005). Courts "retain jurisdiction to review . . . detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Id*. Because § "1226(e) contains no explicit provision barring habeas review . . . its clear text does not bar [a] constitutional challenge to the legislation authorizing . . . detention without bail." *Demore v. Kim*, 538 U.S. 510, 517 (2003). Similarly, § 1226(e) does not bar a constitutional challenge to the procedures utilized to deny bond to a noncitizen under 8 U.S.C. § 1226(a). Jurisdiction does not preclude review of the habeas claims raised in this case.

### III. LEGAL STANDARD

The Supreme Court has referred to the "Great Writ" as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement" and "[r]eceived into our own law in the colonial period." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled in part on other grounds*, *Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The importance of this Great Writ was not lost on the Justices of the Civil Rights era who recognized that the writ's

> function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society,

3

> government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.

*Id*. at 401–02.

"Only in the rarest of circumstances has Congress seen fit to suspend the writ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Moreover, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Id*. (citing U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it")). Indeed, absent suspension, it is available to "challenge the legality of their detention" by "noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty," such as Guantanamo Bay. *Boumediene v. Bush*, 553 U.S. 723, 770 (2008). The Great Writ remains "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *Imm. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 590 U.S. 573, 580 (2020)).

The fundamental protection of habeas corpus applies to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court in *Zadvydas* noted:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id*. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id*.

Habeas petitioners must show they are "in custody in violation of the Constitution or laws

4

or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)); *accord Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (recognizing that habeas relief cannot "be had absent [an] allegation" that the petitioner "has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States"). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Villanueva*, 801 F. Supp. 3d at 696 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## IV. ANALYSIS

Petitioner primarily argues that he is entitled to relief in that his detention is unlawful because the process for bond at the immigration level improperly, and unconstitutionally, places the burden on him to show that he is neither a danger nor a flight risk. As mentioned earlier, the sufficiency of presented evidence is pertinent in the context of that claim. Respondents do not directly address Petitioner's due process claims. They instead rely on divesture of jurisdiction under 8 U.S.C. § 1226(e), which the Court has disagreed with in various contexts. It has now specifically disagreed that § 1226(e) precludes Petitioner's due process claim as to the burden of proof.

Through its focus is on the allocation of the burden of proof under 8 U.S.C. § 1226(a), this case differs from due process violations previously considered by this Court. Still, despite the different focus of the instant claim, the Court's framework for considering whether a procedural due process violation warrants habeas relief remains applicable. *See Longoria Mendoza v. Noem*, ___ F. Supp. 3d ___, ___, No 5:26-CV-0728-JKP, 2026 WL 809441, at *6–10 (W.D. Tex. Feb. 26, 2026). Indeed, a more apt comparative case lies within *Singh v. Bondi*, No. 5:26-CV-0125-JKP,

2026 WL 690013, at *4 (W.D. Tex. Mar. 6, 2026)—a case in which this Court found a due process violation under § 1226(a) while not addressing the allocation of burden of proof. The differences between this case and those cases do not affect whether habeas relief is warranted.

Respondents concede that they detain Petitioner under the discretionary framework of 8 U.S.C. § 1226(a). When "§ 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute." *Gonzalez Arreaga v. Minter*, No. 2:25-CV-03167-TLP-CGC, 2026 WL 279882, at *7 (W.D. Tenn. Feb. 3, 2026) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)). Once it is accepted or concluded that a petitioner's detention is discretionary under § 1226(a), the next task is to determine whether the detention "violates due process." *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491–96 (S.D.N.Y. 2025).

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Further, the Supreme Court has long recognized "that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (sometimes referred to as *The Japanese Immigrant Case*)); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam).

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (addressing due process claim under the Fourteenth Amendment). "Given the undeniable 'textual parallel between the Fifth and Fourteenth Amendments' courts 'understandably construe[ ] 'due process of

6

law' to mean the same thing under the Fifth and Fourteenth Amendments alike.'" *C.M. v. United States*, 672 F. Supp. 3d 288, 342 (W.D. Tex. 2023) (quoting *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 243 (5th Cir. 2022) (Ho, J., concurring)).

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The flexibility of due process "calls for such procedural protections as the particular situation demands." *Id*. This "does not mean that judges are at large to apply it to any and all relationships." *Id*. Instead, the flexibility of due process lies "in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Id*. Supreme Court cases "underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." *See id.* at 335. As succinctly stated in *Mathews*, the three factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

The test articulated in *Mathews* provides the "ordinary mechanism" courts use to balance the "serious competing interests" between asserted governmental needs and the process that an individual contends is due before that individual is deprived of a constitutional right. *Hamdi v. Rumsfeld*, 542 U.S. 507, 528–29 (2004). Courts use the same mechanism "for determining the procedures that are necessary to ensure that [an individual] is not deprived of live, liberty, or property, without due process of law." *Id*. at 529 (cleaned up). The *Mathews* test "dictates that the

process due in any given instance is determined by weighing" the individual's affected private interest "against the Government's asserted interest," which includes "the function involved' as well as any burdens resulting from providing greater process. *Id*.

These factors, and the ensuing balancing, apply "when determining the adequacy of process in the context of civil immigration confinement." *Lopez Benitez*, 795 F. Supp. 3d at 492 (citation omitted). When § 1226(a) applies, procedural due process requires an individualized assessment consistent with the framework articulated in *Mathews*. *See id.* at 492–96; *Gonzalez Arreaga*, 2026 WL 279882, at *7.

## A. Private Interest

Petitioner's "interest in being free from physical detention" has been characterized as "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Even conditional release, such as through parole, "is valuable and must be seen as within the protection of [Due Process]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This is so because "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." *Id*. (internal quotation marks omitted).

As already recognized, Petitioner is owed the process given to him through § 1226(a). *Gonzalez Arreaga v. Minter*, No. 2:25-CV-03167-TLP-CGC, 2026 WL 279882, at *7 (W.D. Tenn. Feb. 3, 2026). And part of that process includes a bond hearing before an immigration judge. *See id*. But as cogently and thoroughly analyzed by the Southern District of New York, the § 1226(a) process has two components—one that applies pre-detention and one that applies as a noncitizen continues to be detained. *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 491–96 (S.D.N.Y. 2025).

Petitioner in this case only challenges due process as it relates to his continued detention without a proper allocation of the burden of proof as to whether he is a flight risk or a danger. Petitioner does not challenge any aspect of the § 1226(a) process that applies pre-detention as discussed in *Singh v. Bondi*, No. 5:26-CV-0125-JKP, 2026 WL 690013, at *5 (W.D. Tex. Mar. 6, 2026).

As the Government continues to detain a noncitizen under § 1226(a), due process requires "a bond hearing before an immigration judge." *Gonzalez Arreaga*, 2026 WL 279882, at *7. Although Petitioner has received such a bond hearing, he argues that the hearing was not conducted in accordance with due process protections because he had to bear the burden to show that he was not a flight risk or a danger. Petitioner does not merely disagree with the result of the bond hearing—he specifically challenges the manner in which it was conducted, particularly with respect to allocating the burden of proof to him.

This Court has previously confronted the allocation of the burden of proof. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *10–11 (W.D. Tex. Oct. 21, 2025). At that time, the Court recognized that some courts would place the burden on the noncitizen, a "practice [that] tracks the agency's own burden allocation at routine bond hearings," while "the vast majority—an overwhelming consensus—of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk." *Id*. at 11 (citations and internal quotation marks omitted). Based on the persuasive authorities cited in *Hernandez-Fernandez*, this Court agreed that the proper allocation for due process purposes was to place the burden on the Government to justify detention by clear and convincing evidence that the noncitizen is a flight risk or danger. *Id*. Requiring the noncitizen to carry the burden of proof impinges upon the noncitizen's private interest in his liberty.

**B. The Risk of Erroneous Deprivation**

As recognized in *Hernandez-Fernandez*, courts have shifted to allocating the burden of proof to the Government. 2025 WL 2976923, at *10–11. This shift "reflects the concern that '[b]ecause the alien's potential loss of liberty is so severe . . . he should not have to share the risk of error equally." *Id*. at 11 (quoting *German Santos v. Warden Pike Cnty. Correctional Facility*, 965 F.3d 203, 214 (3d Cir. 2020)). There is a high risk of erroneous deprivation when the burden of proof is placed upon the noncitizen rather than the Government.

Removal proceedings are civil, not criminal in nature, yet the detainee's freedom hangs in the balance at immigration bond hearings. Unlike criminal defendants, noncitizens in removal proceedings represent themselves if unable to afford an attorney. *See* 8 U.S.C. § 1229a(b)(4)(A) ("the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings"). Detainees are unable to personally gather evidence to support their bond requests. Some detainees are held far from their homes and families. It is much more difficult for detainees to muster relevant evidence to support their bond requests.

Furthermore, placing the burden on the noncitizen forces one to prove a negative, i.e., that the detainee is not a flight risk or not a danger. In this case there is no evidence that Petitioner is a flight risk or danger. He has no criminal history. He has been working and living in the United States for nearly twenty years. He is active in community organizations. His adult children live in the United States as DACA holders. The Government has known Petitioner's location for years as shown by his children's DACA applications. Petitioner is currently applying for asylum and withholding of removal under both the Immigration and Nationality Act and the Convention Against Torture. Even though it appears that Petitioner presented all or much of the aforementioned evidence at the bond hearing and that the Government presented no evidence or argument regarding

either flight risk or danger, the IJ found that Petitioner had not carried his burden to show that he was not a flight risk. Allocating the burden of proof to Petitioner instead of the Government altered the course of the bond hearing and appears highly detrimental to Petitioner. The allocution in this case created a high risk of erroneous deprivation.

## C. The Government's Interest

The Government may validly detain a noncitizen under 8 U.S.C. § 1226(a) when the detention "advances a legitimate governmental purpose." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025). Moreover, there is no question that the Government has interests in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But as already mentioned, nothing in the record indicates that Petitioner is either a flight risk or a danger to the community. He has no criminal history. In these types of circumstances, Respondents have not shown any significant interest in continuing to detain Petitioner. *Lopez Benitez*, 795 F. Supp. 3d at 496.

## D. Balancing Factors

Considering the "significant liberty at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [Petitioner's] detention," the balance of factors overwhelmingly tilts towards finding a due process violation. *See id*. While requiring the Government to show that a noncitizen is a flight risk or danger by clear and convincing evidence may present some additional administrative burdens when compared to allocating that burden to the noncitizen, that minimal additional burden is warranted given the high risk of erroneous deprivation and the fundamental liberty interest at stake.

While the Government has a "countervailing interest . . . in enforcement of the country's immigration laws," *Rojas Vargas v. Bondi*, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at *4 (W.D. Tex. Nov. 5, 2025), such interest is outweighed by the other factors in this case. As

discussed herein, the allocation of the burden of proof under § 1226(a) should be on the Government to show that the noncitizen is either a flight risk or a danger by clear and convincing evidence.

Under the facts and circumstances of this case, the Court finds that Petitioner is entitled to habeas relief based upon his Fifth Amendment due process claim, his detention is unlawful, and habeas relief is proper.

### E. Other Matters

Although Petitioner seeks attorney fees, invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241, and asserts claims under the APA, the Court treats the instant action solely as a habeas action under § 2241. Petitioner does not specifically seek any non-habeas relief and has not paid the required filing fee for any non-habeas claim. "The payment of the $5 habeas filing fee relegates this action to habeas relief only. One cannot pay the minimal habeas fee and pursue non-habeas relief." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *2 (W.D. Tex. June 18, 2020). Because fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, are not available in habeas corpus proceedings like this one, *see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), the Court denies any request for fees in this case.

### F. Remedy

As relief for the violation of due process, Petitioner seeks an immediate bond hearing where the Government bears the burden of proof to show that he is a flight risk or danger by clear and convincing evidence. Alternatively, he seeks immediate release on an appropriate bond.

As fully explained in *Longoria Mendoza*, in general, the proper remedy is for Respondents to release Petitioner from detention. *See* ___ F. Supp. 3d at ___, 2026 WL 809441, at *9–10. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Nevertheless, when a petitioner complains specifically about the manner in which the

Government allocates the burden of proof at a bond hearing conducted under 8 U.S.C. § 1226(a), the Court should explore whether an appropriate remedy is a bond hearing with the burden of proof properly allocated to the Government. This remedy is consistent with this Court's prior discussion of the burden of proof allocation. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *10–11 (W.D. Tex. Oct. 21, 2025). Still, with *Longoria Mendoza*, this Court joined the wave of courts that found immediate release to be the appropriate remedy for the due process violation at issue in that case. ___ F. Supp. 3d at ___, 2026 WL 809441, at *9.

These decisions reflect that not only do waves of change affect the proper habeas remedy in a particular case, but habeas relief is certainly not a one-size fits all. While certain habeas relief may be proper generally or in specific circumstances, other relief may be better suited in another case. Here, unlike in *Longoria Mendoza*, the Government makes no argument that release is the only relief available—although that is a most common refrain from the Government. And, unlike *Longoria Mendoza*, the Government is not contending that 8 U.S.C. § 1226 is inapplicable to Petitioner's detention. This case, furthermore, does not involve any pre-detention due process violation. While Petitioner has built a life in the United States during the twenty-plus years he has lived here, he asserts no pre-detention due process claim.

Under these facts, the Court is confident that the proper habeas remedy in this case is a bond hearing with the burden of proof properly allocated to the Government as discussed herein. But the Court is also cognizant that Petitioner has been detained for more than nine months already, appears to be a good candidate for release, and the crush of immigration detainees is creating delays at many levels of the immigration process. These factors also weigh on the choice of appropriate habeas relief for the due process violation.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No.

1). It is **ORDERED** that:

1. Unless Respondents have a written, detailed order from an immigration judge denying bond to Petitioner in a hearing conducted in compliance with due process as set forth in this case, they shall release Petitioner Juan Covarrubias-Rodriguez from custody to a public location under appropriate conditions of release **on or before April 25, 2026**. Such release may include a notice to appear for a bond hearing to be scheduled **no later than April 30, 2026**. Any bond hearing shall take place before an Immigration Judge, at which the Government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence that he is a danger or flight risk. If Respondents cannot schedule such a bond hearing within the week allotted, then Petitioner shall remain released under the aforementioned appropriate conditions of release.

2. If Respondents release Petitioner, they must **NOTIFY** Petitioner's counsel of the exact location and exact time of release as soon as practicable and no less than two hours before release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents shall **FILE** a Status report no later than **April 26, 2026**, informing the Court whether Petitioner has been released from custody, and if so, on what terms. If Petitioner has not been released from custody, Respondents shall inform the Court when the bond hearing was held, confirm that it was conducted in compliance with this Order, and provide detailed reasons for the immigration judge's bond decision. If counsel for Petitioner disagrees with any aspect of the filed Status Report, counsel may file a separate Status Report.

A final judgment will be issued separately.

**IT IS SO ORDERED this 23rd day of April 2026.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

14